IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EARL C. MORRIS,

      Petitioner,                  No. CIV-10-0897 JAM EFB P

   vs.

JOHN W. HAVILAND,

      Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

      Petitioner is a state prisoner without counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. Petitioner requests appointment of counsel. Respondent moves to dismiss the petition on the ground it fails to invoke federal habeas jurisdiction because the challenged action does not affect the length or duration of petitioner's confinement. For the reasons that follow, the request for appointment counsel is denied and it is recommended that the motion to dismiss be granted, but with leave for the petitioner to file an amended petition.

////
////
////
////
////

## I. Background

The petition concerns disciplinary action taken against petitioner in February 2008 for allegedly distributing marijuana. Dckt. No. 1 at 8, 22-23.[1] On February 17, 2008, petitioner was found guilty of distributing a controlled substance and was assessed a loss of 180 days' credit, among other punishments. *Id.* at 8; *see also* Resp.'s Mot. to Dism. ("Resp.'s Mot."), Ex. 1. Petitioner alleges he was deprived of due process at the disciplinary hearing because there was only evidence that he possessed the marijuana, but no evidence that he distributed it. Dckt. No. 1 at 8.

## II. Request for Counsel

Petitioner requested in his opposition to respondent's motion to dismiss that the court appoint him counsel. Pet'r's Opp'n to Mot. at 6. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). The court may appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also*, Rule 8(c), Rules Governing § 2254 Cases. The court does not find that the interests of justice would be served by the appointment of counsel at this stage of the proceedings.

## III. Respondent's Motion to Dismiss

Respondent moves to dismiss the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases. This court has authority under Rule 4 to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." As a corollary to that rule, the court may also consider a respondent's motion to dismiss, filed in lieu of an answer, on the same grounds. *See, e.g., O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss for failure to exhaust state remedies); *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (using

---

[1] The page numbers cited herein are those assigned by the court's electronic docketing system and not those assigned by the parties.

2

Rule 4 as the procedural vehicle to review a motion to dismiss for state procedural default). Respondent argues that petitioner is not entitled to habeas relief because the disciplinary conviction does not affect the fact or duration of his confinement.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev Stat § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . .; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Respondent claims that success on the petition will not impact petitioner's custody and thus the court is without power to hear the case under section 2254(a). *See Docken v. Chase,* 393 F.3d 1024, 1028-29 (9th Cir. 2004) (treating the issues of whether a claim that could potentially impact the duration of custody was cognizable or was within the court's federal habeas jurisdiction as interchangeable). The party seeking to invoke the jurisdiction of a federal court bears the initial burden of pleading facts sufficient to establish jurisdiction. *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936); *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1074 (9th Cir. 2005); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994). Thus, the court must determine whether petitioner has alleged sufficient facts in the petition to show that the challenged action impacted his custody in a manner sufficient to invoke the court's jurisdiction under the habeas statute.

This determination is complicated by a current lack of clarity in case law regarding whether a potential, rather than certain, impact on custody is sufficient to invoke federal habeas jurisdiction. While the U.S. Supreme Court has repeatedly held that a prisoner who seeks immediate or speedier release from custody (alleging a definite impact on custody in what is often termed a "core" habeas challenge) must pursue his case through a habeas petition rather than a § 1983 action, the Court has not explicitly held that a prisoner whose challenge might not

result in speedier release must press his case under § 1983 rather than a habeas petition. *See Docken*, 393 F.3d at 1028 (noting that, "although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction."). However, where a challenge does not even indirectly implicate the fact or duration of the petitioner's confinement, the Ninth Circuit Court of Appeals has concluded that the challenge is not cognizable in a habeas petition.[2] *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1972) (holding that a challenge to allegedly cruel and unusual prison conditions could not be brought via habeas); *see id.* at 891 ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement."); *see also Muhammad*, 540 U.S. at 754-55 (stating that the plaintiff, who brought a retaliation claim against a prison official, had raised no claim on which habeas relief could have been granted on any recognized theory).

Generally, a prisoner challenging a disciplinary action with an attendant loss of time credits must pursue the challenge in a habeas petition, because a decision in the case in the prisoner's favor would require restoration of the lost time credits and would therefore accelerate the inmate's date of release, making the case the type of "core" habeas challenge that must be pursued by habeas petition. *Preiser*, 411 U.S. at 487-88, 490. Here, however, petitioner is a life-term inmate who passed his Minimum Eligible Parole Date ("MEPD") in 1983. Resp.'s Mot., Ex. 2. Because petitioner is serving the indeterminate portion of his sentence, he will not be released until the parole board finds him suitable for parole. *Id.* at 3. Respondent contends

---

[2] Challenges to prison discipline that do not implicate the fact or duration of confinement may be brought instead under § 1983. Because these claims may not be pursued in habeas actions, the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), which requires that prisoners first obtain reversal or expungement of disciplinary convictions via habeas petition or other means before challenging them in a civil rights action where success in the civil rights action would implicitly question the validity of the litigant's conviction or the duration of his sentence, does not apply. *Muhammad*, 540 U.S. at 751-52, 754-55; *see also Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003) ("[W]here a prisoner-litigant challenges only the conditions of confinement, rather than the fact or duration of his confinement, *Heck*'s favorable-termination requirement does not apply, because federal habeas corpus relief is not available.").

that the duration of petitioner's confinement is thus determined by the parole board, not by statutory credit earnings and losses. *Id.* Respondent submits that because petitioner has passed his MEPD, restoration of the credits will not "necessarily result in earlier release." Resp.'s Mot. at 3.

Petitioner does not contend that restoration of the credits would directly advance his release date or otherwise challenge respondent's characterization of California's parole-release system. Accordingly, the undersigned accepts respondent's argument that restoration of the lost credits here would not itself advance petitioner's date of release. This fact places petitioner's case in the same position as that of a habeas petitioner who challenges a disciplinary action that carries no credit loss.

Petitioner argues that the disciplinary conviction will nevertheless impact the duration of his confinement because it provides a basis on which the parole board may deny parole. Pet'r's Opp'n to Mot. at 4-5. Thus, to rule on respondent's motion to dismiss, the court must determine whether habeas jurisdiction exists when a petitioner challenges prison discipline that will possibly, but not definitely, impact the duration of his confinement by influencing the decision of the relevant parole authority on whether and when to grant the petitioner conditional release.

Courts within the Ninth Circuit have not responded uniformly to this issue. *Compare, e.g., Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole."); *Hardney v. Carey*, No. CIV S-06-0300 LKK EFB P, 2011 U.S. Dist. LEXIS 35603, at *18-22 (E.D. Cal. Mar. 31, 2011) (recommending that the district court find that a challenge to a disciplinary conviction carrying no credit loss was cognizable in habeas because of its likely impact on parole eligibility, adopted in full by district court order dated June 6, 2011); *Johnson v. Swarthout*, No. CIV S-10-1568 KJM DAD P, 2011 U.S. Dist. LEXIS 43798, at *4-8 (E.D. Cal. Apr. 22, 2011) (same); *and Silva v. Cal. Dep't of Corr.*, No. CIV S-03-1508 DFL GGH P, 2005 U.S. Dist. LEXIS 32046, at *2-3

(E.D. Cal. Dec. 9, 2005) (same, adopted in full by 2006 U.S. Dist. LEXIS 3661 (E.D. Cal. Jan. 31, 2006)) *with Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (stating that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); *Everett v. Yates*, No. CIV F-11--00150 AWI GSA HC, 2011 U.S. Dist. LEXIS 23224, at *2-5 (E.D. Cal. Mar. 8, 2011) (recommending the dismissal of a habeas petition challenging a disciplinary conviction with no attendant credit loss, because the potential impact of the conviction on the petitioner's parole prospects was "entirely speculative"); *and Perrotte v. Salazar*, No. ED CV 06-00539-JOHN (VBK), 2010 U.S. Dist. LEXIS 140385, at *9-16 (C.D. Cal. Nov. 8, 2010) (same, adopted in full by 2011 U.S. Dist. LEXIS 6606 (C.D. Cal. Jan 24, 2011)).[3] To assist the court's determination of which among the conflicting courses it wishes to take, the undersigned will briefly discuss the apparent source of disagreement and the various approaches courts in this circuit have taken when addressing habeas petitions challenging prison disciplinary decisions that will impact the duration of confinement only to the extent that they may impact the petitioners' parole eligibility.

---

[3] Unsurprisingly, courts have also disagreed as to whether a life-term prisoner past his MEPD may challenge a disciplinary conviction in a habeas petition for the same reasons that they have disagreed as to whether prisoners in general may challenge disciplinary findings with no attendant loss of time credits in a habeas petition. *Compare Calderon-Silva v. Uribe*, No. SACV 09-832 MMM(JC), 2010 U.S. Dist. LEXIS 138292, at *4-8 (C.D. Cal. Aug. 31, 2010) (recommending dismissal of a habeas petition in which a life-term prisoner challenged a disciplinary conviction because restoration of the lost credits would not advance the petitioner's parole date and "the mere possibility that the . . . disciplinary conviction could be detrimental to petitioner in future parole hearings is too speculative to serve as the basis for a habeas corpus petition," adopted in full by 2010 U.S. Dist. LEXIS 138310 (C.D. Cal. Dec. 21, 2010) *and Thomas v. Wong*, No. C 09-0733 JSW (PR), 2010 U.S. Dist. LEXIS 39748, at *3-10 (N.D. Cal. Mar. 26, 2010) (dismissing a habeas petition in which a life-term prisoner challenged a disciplinary finding because the credit loss imposed could not increase petitioner's minimum or maximum prison terms) *with Oberpriller v. Grounds*, No. C 09-5531 CRB (PR), 2010 U.S. Dist. LEXIS 123998, at *1-4 (N.D. Cal. July 14, 2010) (rejecting respondent's argument that the petition of a post-MEPD life-term inmate challenging a serious disciplinary finding was not cognizable, because the serious disciplinary finding constituted "an obstacle to a favorable parole decision" and thus its expungement would likely accelerate the petitioner's parole eligibility).

Three Ninth Circuit cases are central to the controversy: *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989), *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), and *Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004). In *Bostic*, the court reviewed district court dismissals of ten separate habeas petitions filed by the same petitioner, challenging nine prison disciplinary actions taken against him. 884 F.2d at 1269. Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry of loss of time credits – only a term of segregated housing. *Id.* at 1269. In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record. *Id.* The court "assume[d]" that habeas jurisdiction existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law.[4] [citations] *Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.* [*McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982)].

*Id.* at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole-eligibility.[5]

---

[4] This statement has been undercut by the Supreme Court's indication in *Muhammad* that claims that do not in any way implicate the fact or duration of confinement are not cognizable under the federal habeas statutes. *See* 540 U.S. at 754-55 (stating that the plaintiff, who brought a retaliation claim against a prison official, had raised no claim on which habeas relief could have been granted on any recognized theory); *see also Crawford*, 599 F.2d at 891 ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement."). Further, placement in administrative segregation does not give rise to an actionable claim under the Due Process Clause unless the segregated housing presents a "dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

[5] *Bostic* spoke of "eligibility" for parole. In California, release on parole is a two-step process – first, the prisoner must become "eligible" to be *considered* for parole (sometimes referred to simply as "eligibility") and, second, the prisoner must be found "eligible" to be *released* on parole (sometimes referred to simply as "suitability"). *See Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (highlighting this distinction for purposes of § 1983 challenge to

7

The court revisited *Bostic*'s statements on habeas jurisdiction in *Ramirez*. 334 F.3d at 858-59. In *Ramirez*, a prisoner brought a civil rights action under § 1983 rather than a habeas petition to challenge the procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges (but no loss of time credits), and a referral to administrative segregation. *Id.* at 852-53. He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." *Id.* at 859 n.6. The district court dismissed the case, finding it barred by *Heck*'s favorable termination rule after determining that success in the case would necessarily imply that the disciplinary finding was invalid. *Id.* at 852; *see supra* n.2.

The Court of Appeals reversed, holding that the favorable termination rule does not apply to prison disciplinary sanctions that do not *necessarily* affect the fact or length of a prisoner's confinement. *Id.* at 854-58; *see supra* n.2. The court rejected the state's *Bostic*-based argument that the plaintiff's claim that his disciplinary hearing violated due process was "logically inseparable from an attack on the outcome of that hearing, and that a judgment in his favor would necessarily imply the invalidity of his disciplinary conviction." *Id.* at 859. The court reasoned that the favorable termination rule applies only if success in the § 1983 action would

---

Hawaii's Sex Offender Treatment Program). It is unclear whether the *Bostic* panel's jurisdictional pronouncement was limited to claims likely to accelerate eligibility for consideration or covered both those claims and claims likely to accelerate eligibility for release, as both concepts can be covered broadly by the term "eligibility" and courts often do not distinguish between the two steps. *See* The Free Merriam-Webster Dictionary entry for "eligible," http://www.merriam-webster.com/dictionary/eligible (last checked July 5, 2011) (defining "eligible" as "qualified to participate or to be chosen" and "worthy of being chosen"). The undersigned assumes, absent definitive indication to the contrary, that the court intended that habeas jurisdiction exists both when success on the claim is likely to accelerate the date on which the petitioner becomes eligible for parole consideration as well as when success on the claim is likely to accelerate the date on which the petitioner will ultimately be found suitable for release on parole. This assumption is consistent with the underlying purpose of the writ of habeas corpus, which is concerned with the petitioner's ultimate release. So long as success on the claim is likely to accelerate release under *Bostic*, the court sees no reason to distinguish between "eligibility" and "suitability."

8

necessarily imply the invalidity of a disciplinary finding *and* necessitate a reduction in the plaintiff's length of confinement. *Id.* The state had failed to show that expungement of the disciplinary finding would necessarily accelerate the plaintiff's release, because the parole board could still deny parole on the basis of other factors. *Id.* ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.").

> In the course of its analysis, the court discussed *Bostic* in some detail:
>
> *Bostic* does not hold that habeas corpus jurisdiction is always available to seek the expungement of a prison disciplinary record. Instead, a writ of habeas corpus is proper only where expungement is "*likely* to accelerate the prisoner's eligibility for parole." *Bostic*, 884 F.2d at 1269 (emphasis added). . . . *Bostic* thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus."

*Id.* at 858. From this, the court made the following leap, assuming that the courts' jurisdiction over habeas petitions and their jurisdiction over § 1983 actions are mutually exclusive: "[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not *necessarily* shorten the prisoner's sentence." *Id.* at 859 (emphasis added). For ease of discussion, the undersigned will refer to this quote as the "mutual exclusivity rule." This language has created uncertainty, because challenges to prison conditions that will necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas identified in *Preiser*, and *Ramirez* language indicates that *only* "core" habeas cases can be brought in federal habeas petitions. (Remember that *Preiser* simply held that "core" cases had to be brought in habeas but did not hold that habeas was limited to such cases.) However, *Bostic* – quoted with apparent approval by the *Ramirez* panel – squarely found habeas jurisdiction to exist in a non-"core" situation, where success would not *necessarily* spell earlier release, but was merely *likely to accelerate parole-eligibility*. Thus, *Ramirez*'s mutual exclusivity rule appears inconsistent both with the opinion's prior reliance on *Bostic* for the proposition that "the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983

9

action determines the availability of habeas corpus" and with *Bostic* itself.

One year after *Ramirez*, the court again visited the intersection of habeas and § 1983 in *Docken*. 393 F.3d at 1026-31. In *Docken*, as in *Bostic*, the court reviewed the dismissal of a habeas petition for want of jurisdiction. *Id.* at 1025, 1026. Unlike *Bostic*, the petitioner in *Docken* did not challenge a prison disciplinary finding, but rather the timing of his parole-eligibility reviews. *Id.* at 1025-26. The district court had concluded that the claim could only be brought under § 1983 rather than habeas, because the plaintiff's success in the case would not "entitle" him to release, just an earlier eligibility review. *Id.*

In reversing that conclusion, the Court of Appeals engaged in a lengthy discussion of U.S. Supreme Court and Ninth Circuit precedent. The first conclusion the court drew from that precedent was that, "although Supreme Court law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction." *Id.* at 1028. The court, citing *Bostic*, noted that its own precedent held that habeas jurisdiction was available in some non-"core" circumstances. *See id.* ( "In [*Bostic*], for example, we held that 'habeas corpus jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is *likely to accelerate* the prisoner's eligibility for parole.'").

> Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, *Bostic* defined a class of suits outside the "core" habeas claims identified in *Preiser*. Success on the merits in such cases would not "*necessarily*"implicate the fact or duration of confinement. Instead, such claims have, at best, only a *possible* relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement for parole.

*Id.* at 1028-29. Thus, the court recognized that, under *Bostic*, habeas jurisdiction was proper even where success on the claim would *not necessarily shorten the plaintiff's sentence* – a view of habeas jurisdiction squarely at odds with the mutual exclusivity rule announced in *Ramirez*. In fact, the *Docken* court went even further than *Bostic*, finding cognizable not only those challenges that, if successful, were "likely to accelerate" release, but also those that, if

successful, "could potentially affect the duration of . . . confinement." *Id.* at 1031.

Unfortunately, the *Docken* panel did not expressly resolve the inconsistency between *Bostic* and *Ramirez*. It did attempt to distinguish *Ramirez*'s mutual exclusivity rule in a footnote by stating that it was limited to the circumstances presented in that case, where the prisoner challenged "internal disciplinary procedures" and consequent administrative segregation that did not "deal with the fact or duration of his confinement." *Id.* at 1030 n.4. However, *Ramirez* cannot be distinguished from *Bostic* on those grounds. As in *Ramirez*, the petitioner in *Bostic* challenged at least one prison disciplinary action that resulted in administrative segregation but no loss of time credits. Importantly, in both cases, the prisoners sought expungement of a disciplinary finding from their records, and the inmate in *Ramirez* specifically argued that the challenged disciplinary finding would have an adverse impact on his parole eligibility. *Ramirez*, 334 F.3d at 859 n.6; *Bostic*, 884 F.2d at 1269. Thus, both cases "deal[t] with the fact or duration of confinement" in the same manner.

Accordingly, the court must decide whether to follow *Ramirez*'s mutual exclusivity rule or the approach of *Bostic* and *Docken*. Some district courts that have gone the latter route have reasoned that *Ramirez*'s mutual exclusivity rule was dictum and thus not binding. *E.g.*, *Foster v. Washington-Adduci*, No. CV 09-07987-PSG (DTB), 2010 U.S. Dist. LEXIS 41578, at *12 (C.D. Cal. Mar. 24, 2010); *Hickey v. Adler*, No. 1:08-cv-00826-JMD-HC, 2009 U.S. Dist. LEXIS 67064, at *6 n.4 (E.D. Cal. July 27, 2009); *Dutra v. Cal. Dep't of Corr. & Rehab.*, No. C 06-0323 MHP, 2007 U.S. Dist. LEXIS 82377, at *16-17 (N.D. Cal. Nov. 6, 2007); *Drake v. Felker*, No. 2:07-cv-00577 (JKS), 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007). The undersigned agrees. The mutual exclusivity rule was not essential to the holding in *Ramirez*, which held simply that *Heck*'s favorable termination rule does not apply to § 1983 cases where success in the action would not necessitate earlier release. That holding is not contrary to, and may coexist beside, *Docken*'s conclusion that § 1983 and habeas are not mutually exclusive but instead may both be available to prisoners in some instances, specifically in those challenges that implicate

11

the duration of confinement but would not necessarily, if successful, result in speedier release. Additionally, even if *Ramirez*'s mutual exclusivity pronouncement was essential to its holding, it would carry no weight given *Bostic*'s earlier ruling to the contrary. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 & n.8 (9th Cir. 2005) (en banc) (per curiam) (noting that rulings by three-judge panels are "law of the circuit," and are binding on subsequent three-judge panels).

Accordingly, the undersigned recommends that the court find that, under *Bostic* and *Docken*, habeas jurisdiction exists over the instant petition if expungement of the disciplinary action challenged by petitioner could potentially accelerate petitioner's release. A review of the petition reveals that petitioner has failed to allege facts showing that the court has jurisdiction under the federal habeas statute because success on his claims could accelerate his release. Accordingly, the undersigned recommends that the court grant respondent's motion to dismiss, but with leave to amend. *See Davis v. Haviland*, No. CIV S-10-1029 KJM DAD P, 2011 U.S. Dist. LEXIS 14451, at *11 (E.D. Cal. Feb. 4, 2011). If petitioner elects to file an amended petition, he should include all facts supporting his claim that expungement of the discipline could accelerate his release on parole. (For example, petitioner should allege the dates of any parole suitability hearings at which the disciplinary action was considered, any comments made by the BPH at those hearings suggesting the impact of the disciplinary action on the decision to deny parole, and any other supporting facts.).

**IV.  Mootness**

Although potentially within the jurisdiction of the habeas statute for the reasons just discussed, it is possible that petitioner's claims are nevertheless moot and are thus outside the court's jurisdiction under Article III of the U.S. Constitution. Under Article III, § 2, a federal court's jurisdiction is limited to those cases which present "cases-or-controversies." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In habeas actions, the case-or-controversy requirement mandates that a petitioner must have suffered, or be threatened with, an actual injury traceable to the respondent and redressable by issuance of the writ. *See id.* Respondent does not argue that

12

petitioner's claims are moot, but federal courts "have an independent duty to consider" mootness *sua sponte*. *Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004). Like jurisdiction under the habeas statute, it is petitioner's obligation to allege facts sufficient to show that his claim is within the court's power under Article III. *Jackson*, 399 F.3d at 1074.

In general, a habeas petition challenging a prison disciplinary action no longer presents such a case or controversy, and therefore becomes moot, when the punishment for the action has been withdrawn or completed at the time of the petition. *See Wilson v. Terhune*, 319 F.3d 477, 479, 481-82 (9th Cir. 2003). Where the petitioner can show that so-called "collateral consequences" flow from the disciplinary action (i.e., circumstances beyond the punishment imposed that constitute an actual injury), however, the case remains justiciable. *Id.* at 479-80; *see Spencer*, 523 U.S. at 14-16. This court must therefore determine whether petitioner has alleged facts showing that the disciplinary sanctions against him have not yet been completed or that collateral consequences of the disciplinary action cause his case to remain live.

The petition reveals that the punishment imposed on petitioner at the February 17, 2008 disciplinary hearing consisted of: (1) the 180-day loss of time credits discussed above; (2) ten months placement in administrative segregation; (3) loss of visits for one year, to be followed by non-contact visits for two years; (4) a "custody reduction" for an unspecified duration; and (5) drug testing for an unspecified duration. Dckt. No. 1 at 8, 14. The petition in this case was filed on April 11, 2010, after the terms of administrative segregation and lost visitation privileges had expired. The loss of time credits will not impact petitioner unless it is used by the parole board to deny him parole. It is unclear whether petitioner continues to be subjected to any other aspect of the punishment imposed. Thus, the undersigned recommends that the court order petitioner, in any amended petition, to allege facts showing that his case is not moot, either because he remains subject to the discipline imposed on February 17, 2008 or because that discipline carries

////

////

collateral consequences.

Although petitioner has not expressly argued the matter, the court has considered whether the case is not moot because the disciplinary finding may be considered by parole authorities in determining whether and when he should be conditionally released. Whether potential impact on parole-eligibility constitutes a collateral consequence has been addressed. In *Spencer v. Kemna*, the Supreme Court considered whether an order revoking parole carried collateral consequences. 523 U.S. at 14-16. The petitioner in *Spencer* argued that the order could be used against him in a future parole proceeding. *Id.* at 14. The Court found this possibility insufficient to be considered a collateral consequence, however, because, the potential use of the parole revocation order in a future parole suitability hearing was merely "a possibility rather than a certainty or even a probability." *Id.* This was so, the court concluded, because under state law, the order would be only one factor among many to be considered by the parole authority in a future parole proceeding, and the parole authority had almost unlimited discretion to determine suitability. *Id.*

In *Wilson v. Terhune*, the petitioner argued that a prison disciplinary finding (based on an escape attempt) would adversely affect his future parole prospects. 319 F.3d at 482. The U.S. Court of Appeals for the Ninth Circuit Court of Appeals similarly concluded that such a possibility did not constitute a collateral consequence, because "the decision to grant parole is discretionary" and the disciplinary finding would be only one factor among many considered by the parole board. *Id.*; *see also Carranza v. Gomez*, 221 Fed. Appx. 582, 583 (9th Cir. 2007) (characterizing *Wilson* as holding that "impaired parole prospects do not constitute collateral consequences."). The court also noted that the parole board would likely consider the underlying conduct, which the petitioner did not deny, rather than the disciplinary finding itself, so expunging the disciplinary conviction would not improve his parole prospects. *Wilson*, 319 F.3d at 482.

Here, petitioner does not entirely deny the conduct underlying his disciplinary conviction. He admits to possession of marijuana but claims there was no evidence to find him

14

guilty of distributing it. Dckt. No. 1 at 10-11. He claims the district attorney relied on the underlying conduct to charge him with possession of a controlled substance, that he pled guilty to the charge, and was sentenced to a concurrent state prison term of two years. *Id.* at 7-8. It is possible that expungement of the disciplinary finding from his record would improve his parole prospects to the extent that the punishment it imposed would no longer be considered by the parole board or by petitioner's evaluating psychologists. At the same time, the conduct underlying the disciplinary finding, at least in part, remains part of his record given his guilty plea to possession in state court. Moreover, the disciplinary conviction remains but one consideration among many reviewed by the parole board and the Governor in deciding petitioner's parole suitability. Accordingly, under *Spencer* and *Wilson*, absent sufficient facts showing an actual impact on parole prospects, the potential use of the disciplinary conviction in future parole proceedings appears to be too speculative to be considered a collateral consequence. *Compare Maxwell v. Neotti*, No. 09cv2660-L (BLM), 2010 U.S. Dist. LEXIS 88062, *18-25 (S.D. Cal. July 15, 2010) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss cognizable in habeas but nonetheless moot because the BPH had "complete discretion in determining whether, and to what extent" to consider the rules violation in determining parole eligibility, making it "no more than a possibility that the conviction would impact Petitioner's parole eligibility, thereby rendering this potential consequence too speculative to satisfy Article III's 'injury in fact' requirement.") *with Noor v. Martel*, No. CIV. 08-1656 WBS JFM, 2009 U.S. Dist. LEXIS 56966, at *8-13 (E.D. Cal. July 2, 2009) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss not moot where the petitioner submitted transcripts of prior suitability hearings at which the BPH emphasized that petitioner must demonstrate his ability to be "disciplinary-free" for a long period of time in order to be found suitable for release and where petitioner challenged both the disciplinary conviction and the underlying conduct).

////

## V.   Order and Recommendation

Accordingly, it is hereby ORDERED that petitioner's request for counsel is denied.  It is further RECOMMENDED that respondent's September 1, 2010 motion to dismiss be granted, but that petitioner be granted leave to file an amended petition within 30 days of any order adopting these recommendations including factual allegations showing: (1) that success on petitioner's claims could accelerate his release and (2) that petitioner remains subject to the discipline imposed on February 17, 2008 or that collateral consequences flow from that discipline which prevent the case from being moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE